UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY P. MEEGAN,

                       Plaintiff,

        -vs-                       **No. 1:16-CV-00187 (MAT)**
                                                  **DECISION AND ORDER**
NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                       Defendant.

---

**I.    Introduction**

     Represented by counsel, Timothy P. Meegan ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter was initially before the Court on the parties' cross motions for judgment on the pleadings.[1] The parties' motions were referred to Magistrate Judge Hugh B. Scott for consideration of the factual and legal issues presented, and to prepare and file a Report and Recommendation ("R&R") containing a recommended disposition of the issues raised.

---

[1] This case was originally assigned to Judge Lawrence J. Vilardo, who referred it to Magistrate Judge Scott for a Report and Recommendation, which was completed and filed on April 5, 2017. Doc. 20. The case was referred to this Court by order dated April 27, 2017. Doc. 21.

## II. The R&R

By R&R dated April 5, 2017, Magistrate Judge Scott recommended that the case be remanded for further consideration, including further development of the administrative record, as described therein. Doc. 20. Both parties were notified that they were given 14 days within which to file objections; however, neither party has filed an objection. For the reasons set forth below, the Court remands this case solely for the calculation and payment of benefits pursuant to 28 U.S.C. § 636(b)(1)(C).

## III. Factual Background and Administrative Proceedings[2]

Plaintiff, a veteran, was diagnosed with multiple sclerosis in 1998 after developing balance issues and numbness in the hands and feet. The record reveals that he treated continuously for this condition from 1998, up to and throughout the relevant time period. Although medications controlled his condition for some time, various treatment records indicate that in 2012 his condition exacerbated after he developed a hypersensitivity to Avonex, a medication for treatment of MS symptoms. During the relevant time period, plaintiff's symptoms included neurogenic bladder (a lack of bladder control due to brain, spinal cord, or nerve damage) for which he performed self-catheterization; parenthesis (tingling or numbness) of the hands and feet; general fatigue and generalized upper and lower extremity weakness; visual scotoma (an area of

---

[2] The Court incorporates by reference the comprehensive factual summary included in the R&R. See doc. 20 at 2-8.

partially diminished or degenerated visual acuity); and gait difficulty. MRIs of plaintiff's brain and cervical spine showed areas of demyelination (damage to the protective sheath surrounding nerve fibers in the brain and spinal cord).

Certified physician's assistant ("PA") Stacy Ann Michalski, who treated plaintiff during the relevant time period at the VA Medical Center in Buffalo, wrote on July 2, 2014 that plaintiff suffered from "disorganization of motor function," including "reduced strength at baseline and . . . excessive weakness with sustained muscle use"; "visual and mental impairment" including "blurring [or] tunnel vision with watching computer monitor, television, or any visual stimuli" and "blurring and floaters at peripheral vision that reduce his visual fields"; "short term memory loss, making it difficult for him to follow commands and finish simple tasks"; "difficulty with mental concentration for short periods of time"; "significant upper and lower extremity fatigue with motor functioning"; "bilateral upper and lower extremity paresthesia"; and plaintiff "frequently drop[ped] objects and trip[ped] over uneven surfaces." T. 562.

In a separate form, PA Michalski further opined that plaintiff had poor to no ability to carry out very short and simple instructions; maintain attention for extended periods of 2 hour segments; maintain regular attendance and be punctual within customary tolerances; sustain ordinary routine without special

3

supervision; make simple work-related decisions; complete a normal workday or week without interruptions from psychologically-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. The record of PA Michalski's treatment supports the statements contained within her reports. See T. 268-70, 286-88, 294-98, 462-64, 470-72, 482-84, 514-16, 560-61.

Three treatment notes appear in the record from Dr. David Hojnacki. The first, dated December 31, 2009 (prior to the relevant time period here) noted an essentially normal physical examination. The second, dated March 30, 2011, again noted essentially normal findings but recorded plaintiff's reports that he suffered from "severe urinary retention" for which he self-catheterized at least four times per day, as well as complaints of "chronic fatigue and intermittent spasms in his legs." T. 570. The note indicated that plaintiff was to discontinue his current medication because of a risk of PML (progressive multifocal leukoencephalopathy, an infection which damages myelin). The third treatment note, dated January 16, 2014, noted that Dr. Hojnacki's review of plaintiff's record indicated a history "of severe spinal cord MS." T. 566. Dr. Hojnacki again found an essentially normal physical examination, but noted that plaintiff had experienced multiple episodes of exacerbation of symptoms on several different medications, and indicated that medication management was an active issue going forward.

4

At his hearing on June 2, 2014, plaintiff testified that he had worked at a trucking company, first as a driver, then as a supervisor, and finally as a service fleet manager, for a total of approximately eleven years. For eight years, he took medication which controlled his MS symptoms. However, his immune system developed antibodies to the medication, his symptoms exacerbated, and he struggled to find a new medication. He testified that he had to quit his job because he could not perform his job duties, "was constantly tired," and "couldn't handle the responsibilities of the fleet anymore." T. 42. According to plaintiff, "[t]he simple tasks that [he] had done for the 11 years that [he] had been there [he] could no longer do." Id. Plaintiff testified that his symptoms included fatigue and numbness of the hands, feet, and chest. He stated that he could no longer urinate without using a catheter, which required him to self-catheterize five to six times per day.

During the hearing, the ALJ raised concerns about Dr. Hojnacki's treatment notes. Plaintiff testified that he treated with Dr. Hojnacki only for medication management, but the records submitted by Dr. Hojnacki reflected testing which was inconsistent with plaintiff's testimony regarding his symptoms. The ALJ commented that, based on the discrepancies between plaintiff's testimony and Dr. Hojnacki's medical records, "either that [the examination] didn't happen and this report is unsubstantiated or it did happen and perhaps the doctor was wrong in his conclusions."

5

T. 58. The ALJ went on to state that he was "very, very confused by this record." Id.

**IV. Standard of Review**

Within fourteen days after a party has been served with a copy of a magistrate judge's report and recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). "If no objections are made, . . . a district court need review. . . a report-recommendation only for clear error." Breinin v. Colvin, 2015 WL 7738047, *1 (N.D.N.Y. Dec. 1, 2015). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. (quoting 28 U.S.C. § 636(b)). No objections having been filed, the Court has accordingly reviewed the R&R. However, for the reasons discussed below, the Court declines to adopt the recommendation that this matter be remanded for further consideration, and instead remands the matter solely for the calculation and payment of benefits.

**V. Discussion**

The main issue in this case is whether the ALJ properly rejected the detailed and well-supported opinion of plaintiff's treating physician's assistant, PA Michalski, in favor of giving "great weight to [the January 16, 2014] examination findings of Dr. Hojnaki." T. 26. As discussed above, at the hearing, the ALJ

expressed that this treatment note was "very, very confus[ing]" and commented that with regard to the note, "either [the examination] didn't happen and this report is unsubstantiated or it did happen and perhaps the doctor was wrong in his conclusions." T. 58. Although the ALJ left the record open for plaintiff's attorney to clarify the record, upon receiving no such clarification, the ALJ proceeded to decide plaintiff's application and gave great weight to Dr. Hojnacki's single treatment note, which note offered no functional assessment of plaintiff's limitations.

Upon a review of the administrative record in this case, the Court is troubled that neither plaintiff's attorney nor the ALJ endeavored to clarify with Dr. Hojnacki as to why his three treatment notes conflicted with the lengthy history of plaintiff's treatment at the VA Medical Center, which established that PA Michalski's treating opinion was well-supported. The regulations state that although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is independently "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545 (emphasis supplied) (citing 20 C.F.R. §§ 404.1512(d) through (f)).

7

The ALJ failed to obtain clarification which he believed necessary for interpretation of the record, and when plaintiff's attorney failed to submit such documentation, the ALJ penalized plaintiff for this omission by noting that "no clarifying information was submitted" and gave "great weight" to a single treatment note over the opinion of PA Michalski.[3] Contrary to the ALJ's apparent conclusion, counsel's failure to secure the requested documentation did not absolve the ALJ from his independent duty to develop the record in this non-adversarial proceeding. See Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) ("[T]he ALJ, unlike a judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, and exists even when, as here, the claimant is represented by counsel.") (internal quotation and editorial marks and citations omitted).

Despite the absence of clarification with regard to Dr. Hojnacki's very limited (three) treatment notes, upon a review of

---

[3] PA Michalski saw plaintiff eight times, on January 31, 2012; February 29, 2012; May 24, 2012; November 30, 2012; June 26, 2013; September 27, 2013; January 31, 2014; and June 11, 2014. See T. 268, 295, 286, 514, 482, 470, 462, 560. Treatment notes from the VA Medical Center, where plaintiff was treated by PA Michalski and other providers, span 335 pages of the record. By contrast, Dr. Hojnacki saw plaintiff only three times - and only once during the relevant time period - in treatment notes totaling only nine pages. Perhaps more importantly, Dr. Hojnacki never issued an opinion regarding plaintiff's functional limitations.

8

the record, the Court finds that it presumptively establishes plaintiff's disability pursuant to Listing 11.09. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.09. That listing provides that an individual suffers from multiple sclerosis, and is thereby presumptively disabled, when he or she demonstrates a "[d]isorganization of motor function in two extremities (see 11.00D1),[4] resulting in an extreme limitation (see 11.00D2)[5] in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities" *or* has "[m]arked limitation (see 11.00G2)[6] in physical functioning (see 11.00G3a), and in one of the following":

    (1) Understanding, remembering, or applying information (see 11.00G3b(i)); or

    (2) Interacting with others (see 11.00G3b(ii)); or

---

[4] This section defines "disorganization of motor function," as relevant here, as "interference, due to . . . neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders). By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00(D)(1).

[5] "Extreme limitation," as relevant here, means an inability to "use . . . upper extremities to independently initiate, sustain, and complete work-related activities," and inability to use upper extremities means loss of function of both upper extremities such that "ability to independently initiate, sustain, and complete work-related activities involving fine and gross movements" is "seriously limit[ed]." Id. at § 11.00(D)(2). This includes inability to "to pinch, manipulate, and use [one's] fingers; or not being able to use [one's] hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling." Id.

[6] A "marked limitation" means that "persistent and intermittent symptoms must result in a serious limitation in [a plaintiff's] ability to do a task or activity on a sustained basis." Id. at § 11.00(G)(2)(a).

9

(3) Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

(4) Adapting or managing oneself (see 11.00G3b(iv)).

Id.

Here, PA Michalski explicitly opined that plaintiff suffered from disorganization of motor function, including several limitations in generalized strength, along with visual and mental impairments including blurred and tunnel vision as well as short-term memory loss and concentration problems resulting in a poor ability or total inability to carry out simple instructions, maintain attention and concentration, and perform ordinary functions of any job on a sustained, full-time basis. See T. 562-65. PA Michalski's opinion thus supports a finding that plaintiff suffered a marked limitation in physical functioning, resulting in "frequent drop[ping] of objects and trip[ping] over uneven surfaces," T. 562, as well as marked limitations (evidenced by poor or no ability to function in significant aspects of) in understanding, remembering, or applying information and in concentration, persistence, or pace. Thus, at the least, plaintiff satisfies the requirements of Listing 11.09(B).

PA Michalski's findings are well-supported by the medical record, including her own treatment notes. Her opinion is additionally supported by a 2011 functional opinion of psychologist Dr. Karen Klementowski, who stated, in an assessment for the VA, that plaintiff's mental symptoms associated with his MS included

10

depression, sleep disturbance, and low energy, along with moderate impairments in immediate and recent memory interfering with functioning on a daily basis, difficulty concentrating, organizational difficulties, and disorientation. Although the ALJ was not strictly obligated to consider this evidence which was issued prior to the relevant time period, see Williams v. Colvin, 98 F. Supp. 3d 614, 631 (W.D.N.Y. 2015), this evidence was not irrelevant to the Commissioner's disability determination because it sheds light on the progressive symptoms stemming from plaintiff's MS, which condition dominates plaintiff's disability application. See, e.g., Taylor v. Berryhill, 2017 WL 586440, *3 (10th Cir. Feb. 14, 2017) (noting that "the ALJ could have considered evidence from a time preceding the relevant period if it shed light on the nature and severity of [plaintiff]'s condition during the relevant time period").

The Court recognizes that PA Michalski is not, as the ALJ noted, an "accepted medical source." T. 26. Rather, she is an "other source" pursuant to the regulations. See Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008). However, the ALJ erred in rejecting her opinion for the sole reasons that she was not such an accepted source and because her "opinion [was] contrary to the finding of Dr. Hojnacki, which were largely normal." Id. As the Administration has recognized, in an appropriate case, an "other source" opinion may be weighed more heavily than an acceptable

11

medical source opinion. See SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006) ("Giving more weight to the opinion from a medical source who is not an 'acceptable medical source' than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p.").

Moreover, "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." Id. at *5. Quite significantly, the "opinion" evidence from Dr. Hojnacki which the ALJ weighed over PA Michalski's opinion was not actually opinion evidence at all: it gave no assessment of plaintiff's functional limitations as contemplated by the regulations. See 20 C.F.R. § 404.1527 (noting that medical opinion evidence "reflect[s] judgments about the nature and severity of [a plaintiff's] impairment(s), including . . . symptoms, diagnosis and prognosis, *what [the plaintiff] can still do despite impairment(s), and [the plaintiff's] physical or mental restrictions*.") (emphasis added). Notably, PA Michalski's opinion contained all of the aspects enumerated in the regulations and was, as discussed above, supported by plaintiff's treatment record and by Dr. Klementowski's opinion.

The Court is also persuaded by plaintiff's argument that the hypothetical posed to the vocational expert ("VE") did not accurately reflect his RFC determination. The RFC determination

12

stated that plaintiff could perform sedentary work "except occasional use of hands for gross or fine manipulations, and feet for foot pedals and controls and [was] unable to perform *any activity* for more than 15 minutes at a time." T. 21 (emphasis added). The ALJ's hypothetical to the VE, however, assumed an individual who could perform sedentary work and could use hands for fine or gross manipulation and feet for pedals and controls but could not do those activities "at any one time for greater than fifteen minutes." T. 74. The VE specifically clarified that "*those activities* . . . could be done within fifteen minutes at a given point in time." T. 74-75 (emphasis added). The ALJ's RFC, which found that plaintiff could not perform *any* activities for more than 15 minutes at a time, was actually supportive of a finding of disability, further warranting a remand for the calculation of benefits.[7]

The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, see Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, see Butts v. Barnhart, 388 F.3d 377, 385–86 (2d Cir. 2004). Because the Court finds that plaintiff's disability is persuasively demonstrated by this record, no useful

---

[7] As a final note, as plaintiff points out, pursuant to HALLEX I-2-1-40, his case is "designated critical" because he "received a 100 percent permanent and total (100% P&T) disability compensation rating from the Department of Veterans Affairs (VA)." See T. 246.

13

purpose would be served by a remand for further consideration. Three stray treatment notes from Dr. Hojnacki do not undermine the well-supported opinion of this treating source who had the benefit of observing plaintiff over a longitudinal period of treatment within the relevant time frame. There is no reason to conclude that clarification of these notes would alter the Court's conclusion that plaintiff's longitudinal treatment, along with the opinion of his treating source PA Michalski, establish presumptive disability pursuant to Listing 11.09.

Moreover, the Second Circuit "has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." McClain v. Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (citations omitted). Reversal for calculation of benefits is particularly appropriate in this case because plaintiff's benefits claim has been pending for almost five years. Considering the significant delay plaintiff has already experienced, and the convincing evidence of disability in this case, the Court remands this case solely for the calculation and payment of benefits.

**VI. Conclusion**

For the reasons discussed herein, the Court adopts the findings of the R&R (Doc. 20) but declines the recommendation to remand this case for further consideration, and instead remands the case solely for the calculation and payment of benefits. The Commissioner's motion for judgment on the pleadings (Doc. 18) is therefore denied, and plaintiff's motion for judgment on the

pleadings (Doc. 12) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   May 5, 2017
         Rochester, New York.